## FRANCIS WARNER

*v.*

## WILLIAM H. W. CUSHMAN *et al.*

1. REPLEVIN—*when it will lie.* A party owned a quantity of corn which had been purchased for him by a warehouseman, who put it in a mixed mass with other corn, owned by different persons, who had stored their corn with the warehouseman. The warehouseman delivered the whole of the corn, in its mixed condition, to the party for whom he had been buying, from whose possession it was afterwards wrongfully taken by a third party. The party from whose possession the corn was thus wrongfully taken, recovered it by action of replevin.

2. PAYMENT *of debts with property of others*—*liability to the real owners.* It seems the party thus receiving from the warehouseman the corn of other persons, if he applied it to the payment of a debt due to him from the warehouseman, would be liable to the real owners.

WRIT OF ERROR to the Circuit Court of the county of La Salle; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was an action of replevin brought by William H. W. Cushman, Isaac V. Waterman and William M. True, who were partners, under the firm and style of Cushman, True & Co., against Francis Warner, to recover the possession of seven thousand bushels of corn, which, it was alleged in the affidavit, the plaintiffs below were justly entitled to, and which Warner had unjustly and unlawfully taken, and then detained from them.

The defense set up by Warner was, that he took the corn in controversy, and detained the same, by virtue of an execution to him directed, as sheriff of the said county of La Salle, which execution was issued out of the Superior Court of Chicago, upon a judgment previously rendered therein, in favor of William Martin against Micaiah F. Fairfield and John D. Weld, alleging that at the time said execution came to his hands, and was levied upon the corn, it was the property of Fairfield & Weld, and liable to be taken and sold on said execution.

Upon the trial of the cause, the plaintiffs below introduced *Micaiah F. Fairfield,* as a witness on their behalf, who testified that he and Weld were partners in the business of buying and storing grain in Ottawa, in November and December, 1859. That on the premises occupied by them were three cribs for storing ear corn, and that on the twenty-second day of said December there were in said three cribs about 14,000 bushels of ear corn, being the same corn in controversy, and other corn belonging to Herford, Olmstead, Umlauf, Harding and others, who had stored corn with them, and the corn of those persons was mixed by Fairfield & Weld, by consent of Herford, Olmstead, Umlauf, Harding and others, so that the corn replevied, and that of said last named persons, formed a mixed mass in said three cribs, and that the fourteen thousand bushels continued so mixed together until the seven thousand bushels were replevied and separated from the mass, and taken away by the coroner by virtue of the writ of replevin in this case.

In the latter part of November, a small amount of ear corn was placed in some of said three cribs, but the main portion of 14,000 bushels was placed in the three cribs between the 1st and 22nd of December, 1859. In the latter part of November, 1859, it was agreed between Fairfield and Cushman, for their respective firms, that Cushman, True & Co., who were bankers, should furnish Fairfield & Weld money to the extent of thirty cents a bushel, to be used in the purchase of corn; that corn purchased with said money should be for Cushman, True & Co., and become, when so purchased, their corn; that said Fairfield & Weld should store said corn and pay all the expenses of taking care of and shipping the same; that upon the sale of said corn, which should be shipped to such persons as said Cushman, True & Co. should direct, and when they should direct, said Cushman, True & Co. should receive from the proceeds the money advanced by them, together with one and a half per cent. a month interest thereon; that Fairfield & Weld were to pay all expenses, including insurance, and Cushman, True & Co. were to be repaid the money advanced by them, and said interest on said

money, and nothing more, and all the profits were to be Fairfield & Weld's; that Fairfield & Weld, when money was advanced to them, gave their notes to Cushman, True & Co. for the amount advanced, and the interest; that in November and December, 1859, Fairfield & Weld gave to Cushman, True & Co., warehouse receipts, purporting to be for corn in store, as described in the receipts hereinafter mentioned, dated December 22, 1859; that when they issued the warehouse receipts, True, one of the plaintiffs, objected to the phrase in the warehouse receipts, " at owners' risk," and the same was stricken out; that the value of the corn in said warehouse receipts was about $400 more than the money so advanced by Cushman, True & Co.—they advanced about $3,800.

When the arrangement was made to advance the money, Cushman requested Fairfield to keep the corn purchased with money furnished by Cushman, True & Co., separate. Fairfield said it would be inconvenient to do so, and made no agreement that he would do so, and did not, in fact, keep it separate, but mixed the corn purchased with plaintiffs' money with the corn of the others who stored grain with them ; that the corn purchased with plaintiffs' money, and stored in said three cribs, amounted to about seven thousand bushels. Did not remember ever having any conversation with John D. Olmstead on the subject of the arrangement between Fairfield & Weld and the plaintiffs below, in relation to the terms upon which plaintiffs were to advance money. On the 9th of March, 1860, the defendant, Warner, took possession, as sheriff, of all the corn in the three cribs. On the first of March, 1860, Fairfield delivered to plaintiffs below the possession of the corn in said cribs, as the corn purchased for them, for the purpose of satisfying said corn receipts. Plaintiffs below put a fence around the three cribs. Defendant below broke the enclosure, and took possession of the three cribs of corn.

*Cross-Examination.* Defendant proved by said Fairfield the execution of the following receipt by True, one of the plaintiffs below, and read the same in evidence:

"Received of Fairfield & Weld the following grain receipts and notes, as collateral security for the payment of their indebtedness to us:

Nov. 23.    Receipt for 3,000 bushels of corn at Ottawa.
"   28.       "      "   2,000    "     "    "    "     "
Dec.  5.       "      "   2,000    "     "    "    "  Utica.
"    5.       "      "   2,000    "     "    "    " Ottawa.
"   14.       "      "   1,000    "     "    "    "     "
"   19.       "      "   1,000    "     "    "    "     "
"   12.    Notes of sundry persons to the amount of $882.58.

                              CUSHMAN, TRUE & CO."
" *Ottawa, December* 22, 1859.

The defendant (plaintiff in error) proved that a judgment was rendered, in the Superior Court of Chicago, on the 20th of December, 1859, in favor of William Martin against Fairfield & Weld, for $9,404.58, and costs; that an execution was issued upon said judgment, December 20, 1859; that defendant was then sheriff of La Salle county, duly elected and qualified; that said execution came into his hands, as such sheriff, on the 22nd day of December, 1859, and that the same was levied upon all the corn in the three cribs, on the 9th day of March, 1860.

*John D. Olmstead* testified, that in November and December, 1859, he stored about 1,500 bushels of corn with Fairfield & Weld, which was placed in the cribs out of which the corn was replevied; that his corn was mixed with the other corn in the cribs, and was taken by the plaintiffs on their writ of replevin; that he knew of no arrangement between plaintiffs and Fairfield & Weld, that the latter were to keep plaintiffs' corn separate. Fairfield told witness that Fairfield & Weld were hiring money of the plaintiffs to use in the purchase of grain. Witness was engaged in the warehouse business; had stored a good deal with others; that the usual custom in Ottawa was to mix the corn of different owners together, they to receive a like quantity and quality, but not the same corn. That True, one of the plaintiffs, passed the place of business of Fairfield & Weld daily, in

going from his place of business to his dwelling-house; that Fairfield & Weld, in November and December, 1859, were warehousemen, engaged in buying and storing grain—corn, oats, wheat, etc.

*Harding* testified that he was a farmer; stored corn with Fairfield & Weld in the winter of 1859—about December of that year; that his corn went into said cribs from which the corn was replevied, and was mixed up with the other corn therein.

*Fairfield,* being recalled, said that the arrangement between him and Cushman was made before any corn was stored in the cribs, and that he built the cribs himself.

Upon this evidence and several instructions given by the court, which it is not material to notice here, the cause was submitted to the jury, who returned a verdict for the plaintiffs below. The defendant interposed a motion for a new trial, which was overruled, and a judgment was entered in pursuance of the verdict of the jury. The defendant below thereupon sued out this writ of error, upon which the question arises, whether the corn in controversy was the property of Fairfield & Weld, and subject to the execution against them.

Messrs. LELAND & BLANCHARD, for the plaintiff in error, insisted that upon the proofs it was clear that Cushman, True & Co. knew the corn which was being purchased by Fairfield & Weld, with money advanced by them, was not being kept separate from that which was being stored for other persons; and by the law, as settled in *Low* v. *Martin,* 18 Ill. 286, the plaintiffs below could not recover.

The interest of the plaintiffs being an undivided one, the action should have been *trover,* so that justice could be done by fixing the proper measure of recovery in the verdict.

Messrs. GLOVER, COOK & CAMPBELL, for the defendants in error.

The whole of the corn had been lawfully in the custody of Fairfield & Weld, and was by them turned out to Cushman,

True & Co., who became thereby lawfully in possession of it. The action of replevin is a possessory action, and the plaintiffs below having the right of possession as against the sheriff, they can maintain this action. *Warner* v. *Malthus*, 18 Ill. 86; *Anderson* v. *Talcott*, 1 Gilm. 265; *King* v. *Ramsey*, 13 Ill. 619; 1 Greenlf. Ev., sec. 532; *Wallace* v. *Clark*, 7 Ind. 298.

Replevin lies where trespass might be brought; possession by the plaintiff, and an actual wrongful taking by the defendant, are sufficient to support the action. *Pangborn* v. *Partridge*, 7 Johns. R. 140; *Marshall* v. *Davis*, 1 Wend. R. 109; *Rogers* v. *Arnold*, 12 Wend. R. 30; *Blue* v. *Leathers*, 15 Ill. 32.

If the corn of Cushman, True & Co. was mixed with the corn of Olmstead and others, by the consent of all parties, then the several proprietors had a property in common in the whole, according to their respective portions put in mass. *Low* v. *Martin*, 18 Ill. 286; Story on Bailment, Sec. 40; 2 Bl. Com. 405.

In such case, Fairfield & Weld had no interest in the corn upon which the lien of the execution could attach. The corn had been delivered to Cushman, True & Co. for the purpose of having their portion of the corn separated from the mass, and the residue delivered to the owners. The possession of Cushman, True & Co. was a lawful possession. They had the absolute possession and the absolute right to it, except as against Olmstead, Herford, Umlauf and the other storers; and in replevin, absolute possession of property, combined with the absolute right to it, except as against some person other than the defendant, will entitle the plaintiff to maintain his action. This was expressly decided in *Johnson* v. *Carnly*, 10 N. Y., 6 Seld. 570.

It is contended that Cushman, True & Co. could not replevy their own corn which had been wrongfully taken from them, because it was mixed with corn belonging to others. But the corn belonging to Cushman, True & Co. was not mixed with their consent.

Cushman, True & Co., by receiving possession of all the

corn, became liable to account to the other owners for their respective portions, and they had a right to regain the possession in this form of action.

Messrs. LELAND & BLANCHARD, for the plaintiff in error, in reply.

A distinction is sought to be taken between the case of *Low* v. *Martin* and the one at bar, in this, that if the plaintiffs did not acquiesce in the mixing of the corn purchased with the money loaned by them, with that of other storers with Fairfield & Weld, they had a right to replevy out of the mixed mass as much corn as was purchased with the money loaned for that purpose. But all the authorities agree that an action of replevin can only be maintained for property capable of identification, and delivery by the sheriff to the plaintiff, and never by a tenant in common for an undivided interest in chattels, and this principle is settled in the case of *Low* v. *Martin.*

Mr. CHIEF JUSTICE CATON delivered the opinion of the Court.

We can see no pretense for holding that this corn was subject to the execution against Fairfield & Weld. When the corn was purchased by them, with the money obtained from Cushman, True & Co., it was expressly agreed, that the title to the corn should remain in the latter firm till it should be sold and converted into money; and long before these creditors of Fairfield & Weld had acquired any lien upon it, Cushman, True & Co. had reduced the corn into their actual, physical possession. If they also took possession of other corn belonging to Olmstead and others, who stored with Fairfield & Weld, this was no business of the creditors of this house. It did not subject the corn to their execution, and if taken and applied to the payment of their debt, Cushman, True & Co. are responsible to the real owners. The case is so plain that we can see no real question in it.

The judgment is affirmed.

*Judgment affirmed.*